IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

GABRIEL DE LEON, RAMON PENA, and
JOSE LUIS RAMIREZ,

                            Plaintiffs,                            OPINION & ORDER

    v.

                                                          16-cv-348-jdp

GRADE A CONSTRUCTION INC.,

                            Defendant.

---

Plaintiffs Gabriel De Leon, Ramon Pena, and Jose Luis Ramirez allege that their former employer, defendant Grade A Construction Inc., failed to pay overtime, in violation of the Fair Labor Standards Act (FLSA) and Wisconsin law, and failed to pay the prevailing wage, in violation of Wisconsin law. Plaintiffs seek to represent two FLSA collective classes and two Rule 23 classes under Wisconsin wage and hour laws.

Now plaintiffs move for conditional certification of their FLSA classes. Dkt. 30. Because plaintiffs have made the modest showing required to grant conditional certification and authorize notice to the classes, the court will grant the motion.

FACTS

When determining whether plaintiffs have demonstrated that they are entitled to conditional class certification, the court considers the complaint and the affidavits the parties have submitted. *Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 357 (W.D. Wis. 2014). "Plaintiffs' materials are the proper focus at this preliminary stage, not defendants'. For the purposes of conditional certification, therefore, the court resolves any factual disputes in plaintiffs' favor." *Id.* at 358 (citations omitted).

Grade A directly employs workers ("official" employees) and staffs jobsites with workers from a staffing agency, EC Property Services, Inc. Grade A pays its official employees an hourly wage plus one paid half hour for lunch. The lunchbreak does not count towards the 40-hour-per-week overtime requirement. Thus, a standard work week for an official employee, including the paid lunch, is 42.5 hours. Employees, with Grade A's approval, may "bank" hours worked in excess of 42.5, to be paid out in future weeks when the employee does not work 42.5 hours. Grade A pays the EC Property Services workers on a "piece-rate" basis. A piece-rate compensation scale pays workers according to the number of measurable units or pieces they complete—not the number of hours they work.

Grade A hired Ramirez as an official employee and, at certain points, banked his overtime hours. Plaintiffs have produced three other employees' timesheets that show that the employees worked more than 42.5 hours in certain weeks, yet Grade A paid the employees for 42.5 hours. This purportedly shows that other employees were banking their overtime hours, too.

Grade A hired De Leon and Pena through EC Property Services to work on Grade A jobsites. The EC Property Services workers often worked at least 57 hours per week during some projects; however, Grade A paid EC Property Services (who, in turn, paid its employees) at the piece-rate level—even after the employees worked more than 42.5 hours.

Plaintiffs allege that Grade A implemented company-wide policies and practices that resulted in lost overtime pay for both official and EC Property Services workers, in violation of the FLSA. For his part, Ramirez alleges that Grade A's banked hours policy violates the FLSA. Ramirez seeks to represent all employees that had their hours banked and lost overtime wages.

De Leon and Pena seek to represent EC Property Services workers that did not receive overtime pay for their work on Grade A jobsites due to the piece-rate policy.

ANALYSIS

Plaintiffs move for conditional certification of two FLSA collective classes, pursuant to 29 U.S.C. § 216(b). Dkt. 30.

A. **Conditional certification**

Plaintiffs allege violations of the FLSA's overtime provisions. Such "[a]n action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). FLSA collective actions are different than Rule 23 class actions: potential FLSA plaintiffs receive notice and an opportunity to opt *in* to the class rather than notice and an opportunity to opt *out*. *Id.*; *Alvarez v. City of Chicago*, 605 F.3d 445, 448 (7th Cir. 2010). "The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011).

Unlike Rule 23, "[t]he FLSA does not specify the details of how collective actions are to proceed, and thus, the management of these actions has been left to the discretion of the district courts." *Jirak v. Abbott Labs., Inc.*, 566 F. Supp. 2d 845, 847 (N.D. Ill. 2008) (citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170-72 (1989)); *see also Alvarez*, 605 F.3d at 449 ("A district court has wide discretion to manage collective actions."). District courts in this circuit—and others across the county—have adopted a two-step approach to collective action certification. *Jirak*, 566 F. Supp. 2d at 847. First, the plaintiff must "make a minimal showing

that others in the potential class are similarly situated." *Mielke v. Laidlaw Transit, Inc.*, 313 F. Supp. 2d 759, 762 (N.D. Ill. 2004). This first step is a lenient test: "a court requires nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan." *Jirak*, 566 F. Supp. 2d at 848 (quoting *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)). Because "the 'similarly situated' standard is a liberal one, it 'typically results in conditional certification of a representative class.'" *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (quoting *Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003)). Second, after the parties have engaged in discovery and the opt-in process is complete, the court undertakes a "more stringent" analysis of the similarities among class members. *Mielke*, 313 F. Supp. 2d at 762. "At step two, the Court must consider: (1) whether the plaintiffs share similar or disparate employment settings; (2) whether affirmative defenses raised by the defendant would have to be individually applied to each plaintiff; and (3) any fairness and procedural concerns." *Jirak*, 566 F. Supp. 2d at 848. At step two, the court considers whether "the plaintiffs are *in fact* similarly situated to those who have opted in." *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 629 (W.D. Wis. 2009) (emphasis added). If they are not, the court will decertify the class.

Here, on plaintiffs' motion for conditional certification, the court considers only whether plaintiffs have made the step one "modest factual showing." *See id.* To determine whether plaintiffs have satisfied step one, "the court evaluates the record before it, including [the defendant's] oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members." *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08-cv-2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009). "This determination does not involve

4

adjudication of the merits of the claims; rather, plaintiffs must demonstrate only that there is some factual nexus that connects them to other potential plaintiffs as victims of an unlawful practice." *Espenscheid v. DirectSat USA, LLC*, No. 09-cv-625 (W.D. Wis. June 7, 2010), Dkt. 129, at 13 (citing *Sjoblom v. Charter Commc'ns, LLC*, 571 F. Supp. 2d 961, 967 (W.D. Wis. 2008)). Plaintiffs must adduce evidence that the proposed collective action will "facilitate efficient resolution of common questions and common answers." *Fosbinder-Bittorf v. SSM Health Care of Wis., Inc.*, No. 11-cv-592, 2013 WL 3287634, at *4 (W.D. Wis. Mar. 21, 2013).

The court will address each proposed collective class in turn.

**1. "Official" employee class**

Plaintiffs ask the court to conditionally certify a class of "official" Grade A employees "who were not immediately paid in cash for their overtime hours worked." Dkt. 31, at 1. This is the banked hours class. Plaintiffs contend that they have advanced allegations and adduced evidence sufficient to show that Grade A has allowed multiple employees to bank overtime hours, to be paid at a later date, in violation of the FLSA.

Grade A contends that plaintiffs cannot show that it *required* its employees to bank overtime hours or that it did not eventually compensate its employees for overtime worked. Grade A has adduced four Grade A employee declarations that state that "[a]s far as [they] know Grade A does not have any policy requiring [them] to bank [their] overtime hours worked." Dkt. 38, ¶ 2; Dkt. 39, ¶ 2; Dkt. 40, ¶ 2; Dkt. 41, ¶ 2. The employees believe that they can choose whether to bank their overtime hours. That said, Grade A concedes that it has banked overtime hours *when employees requested it*. Dkt. 37, at 3.

Grade A is correct: plaintiffs have not adduced any evidence that the purported policy is mandatory or always imposed. But the clarification Grade A makes—that banking overtime

5

hours is an *option* for employees—is not material to the conditional certification inquiry. The FLSA requires that overtime pay "be timely made." *Howard v. City of Springfield*, 274 F.3d 1141, 1148 (7th Cir. 2001). "Thus, the statute is violated even if the employer eventually pays the overtime amount that was due." *Id.* The requirement that overtime be timely paid "may not be waived, and 'even the workers' enthusiastic assent to deferred payment—a form of employer-held savings account—is ineffectual.'" *Id.* (quoting *Calderon v. Witvoet*, 999 F.2d 1101, 1107 (7th Cir. 1993)). Under the FLSA, "overtime generally must be calculated and paid on a pay period by pay period basis." *Id.* At this point, it is possible that Grade A's policy of allowing its employees to bank overtime at their option may violate the FLSA.

Plaintiffs have made a minimal factual showing that the proposed collective class members are similarly situated. Grade A allowed multiple employees to bank overtime hours, purportedly in violation of the FLSA. The proposed collective class raises a common legal question and will provide an answer common to its members: regardless of whether or how often employees banked overtime hours, the court will need to determine whether Grade A's decision to honor banked hour requests violates the FLSA. Even if employees did not bank overtime hours identically, the fact that they took advantage of Grade A's banked hours option creates a sufficient factual nexus between Ramirez and the proposed class. "If common questions predominate, the plaintiffs may be similarly situated even though the recovery of any given plaintiff may be determined by only a subset of those common questions." *Alvarez*, 605 F.3d at 449. The court will conditionally certify the first class.

2. **EC Property Services employee class**

Plaintiffs ask the court to conditionally certify a second class of purported Grade A employees "jointly employed by Grade A and EC Property Services Inc., who were paid a[t]

6

the same piece rate, without an overtime supplement, for all of their hours worked." Dkt. 31, at 1. Plaintiffs contend that Grade A jointly employed De Leon, Pena, and other similarly situated employees because (1) EC Property Services was not onsite and did not oversee the employees when they worked for Grade A; (2) a Grade A employee would tell the EC Property Services employees what rooms to work in and would inspect their work when they finished; and (3) Grade A would tell the EC Property Services employees when to start work. The EC Property Services employees typically worked at least 57 hours each week, but EC Property Services paid them per piece of drywall installed. Plaintiffs contend that the proposed class is similarly situated "on the issue of whether they were employed by Grade A" and "with respect to how they were compensated by their joint employers." *Id.* at 8, 9.

Grade A opposes conditional certification, contending that plaintiffs cannot show that the piece-rate employees were Grade A employees. Grade A's owner and executive vice president of operations, James Yaresh, states that Grade A never required the EC Property Services employees to be on jobsites at particular times: they "could show up to the jobsites at any time and could leave the jobsites at any time. Grade A had no control over the hours worked by the employees of EC Properties." Dkt. 42, ¶ 5.

Plaintiffs appear to dodge the issue (at least for now), arguing that the court need only concern itself with whether the "employee" question—whether De Leon, Pena, and other proposed class members were Grade A employees—"can be resolved on a common basis." Dkt. 45, at 2. True, the court need not decide the suit's merits at this stage. But plaintiffs must adduce evidence sufficient to minimally show that the proposed class members were victims of a single Grade A policy. Though their showing is somewhat weak, it satisfies step one's lenient standard. Resolving factual disputes in plaintiffs' favor, the record suggests that proposed class

members are similarly situated in that they were or are compensated in the same way and that policy purportedly violates the FLSA. The proposed class members raise common factual and legal questions, namely, whether they were/are Grade A employees, whether Grade A is responsible for the piece-rate policy, and whether that policy violates the FLSA.

The court will conditionally certify both classes. If it turns out that there is no uniform policy common to the class members who opt in, or that the class is "hopelessly heterogeneous," *Jonites v. Exelon Corp.*, 522 F.3d 721, 725 (7th Cir. 2008), the court will decertify the class upon Grade A's motion.

**B. Notice**

Plaintiffs have submitted a proposed notice for each class. Dkt. 35 and Dkt. 36. District courts have discretion to craft and facilitate the notice that named plaintiffs send to potential opt-in plaintiffs. *Hoffmann-La Roche*, 492 U.S. at 169. Plaintiffs define Ramirez's class as: "current or former employee[s] . . . of Grade A [C]onstruction Inc., who worked for Grade A on or after May 26, 2013." Dkt. 35, at 1. Plaintiffs define De Leon and Pena's class as: "current or former employee[s] of EC Property Services who worked at the Park Place Apartments Project in Madison, Wisconsin; or at the Avenir Apartments Project in Milwaukee, Wisconsin." Dkt. 36, at 1. Plaintiffs request a 60-day notice period.

Grade A takes issue with two aspects of plaintiffs' proposed notification process. First, because plaintiffs did not include a proposed consent form in their materials, Grade A requests the right to see the consent form before it is sent out. The parties will meet and confer for the purpose of submitting a joint consent form for the court's approval.

Second, Grade A requests that the notices tell the potential class members that they have the right to consult their own attorney and the right to contact Grade A's attorney. In

8

reply, plaintiffs suggest adding the following language to the "HOW AND WHEN TO JOIN THE SUIT" and "EFFECT OF JOINING THE SUIT" sections:

> You have the right to consult an attorney on whether to opt into the lawsuit. However, if you consult an attorney other than the one listed on the bottom of this notice, you will be responsible for paying that attorney for the consultation.

Plaintiffs strenuously object to the telling the potential class members to contact Grade A's attorney.

The court will adopt plaintiffs' suggestion in part. The notices will include the following sentence at the end of the two sections mentioned above: "You have the right to consult an attorney of your own choosing on whether to opt into the lawsuit." Plaintiffs' second sentence may deter potential class members from consulting independent counsel. And the court will not tell potential class members that they have the right to contact Grade A's counsel. Encouraging unrepresented potential plaintiffs to speak to Grade A's counsel contradicts the goals of the FLSA, which is to provide an outlet for employee redress free from employer harassment and pressure.

A 60-day notice period is appropriate. *See Witteman v. Wis. Bell, Inc.,* No. 09-cv-440, 2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) (finding that 30 days leaves little room for any delays that might occur as a result of difficulty in locating former employees). Grade A's deadline to move for decertification will be extended to one week after the close of the notice period.

ORDER

IT IS ORDERED that:

9

1. Plaintiffs Gabriel De Leon, Ramon Pena, and Jose Luis Ramirez's motion for conditional class certification, Dkt. 30, is GRANTED.

2. Plaintiffs are directed to amend the proposed class notices, Dkt. 35 and Dkt. 36, as discussed above.

3. Plaintiffs and defendant Grade A Construction Inc. shall meet and confer and submit a proposed consent form for approval no later than May 18, 2017.

4. Defendant may have until May 22, 2017, to submit to plaintiffs a list of the names and last known mailing addresses of putative class members. Plaintiffs must mail the class notices and opt-in forms to putative class members within one week of receiving the list.

5. Defendant's motion for decertification is due August 5, 2017.

Entered May 11, 2017.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge